UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MAIQUE GONZALEZ,

            Petitioner,

        v.                                          Case No. 2:26-cv-1523-KCD-NPM

WARDEN, FLORIDA SOFT SIDE
SOUTH DETENTION CENTER,
US ATTORNEY GENERAL,

            Respondents.
                                            /

## ORDER

Petitioner Maique Gonzalez has filed a pro se habeas corpus petition challenging his detention by U.S. Immigration & Customs Enforcement. (Doc. 1.)[1] As best the Court can tell, he claims that his continued detention violates the Fifth Amendment. (*Id.* at 7-8.) Respondent opposes the petition. (Doc. 7.) For the reasons below, the petition is **GRANTED**.

## I. Background

Gonzalez, a Cuban citizen, entered the United States in 2003 under the Visa Waiver Program. His status was later adjusted to lawful permanent resident. In 2015, he was convicted of child abuse. He was then ordered removed and issued a notice to appear.

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

On September 28, 2017, a final order of removal was entered as to Gonzalez. When his removal could not be completed, he was placed on supervision. ICE revoked that supervision on November 2, 2025, and again placed him in custody. ICE attempted to remove Gonzalez to Mexico, but he allegedly refused. Months later, he filed this habeas petition.

## II. Legal Framework

The federal habeas statute, 28 U.S.C. § 2241, provides authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of the Constitution or law or treaties of the United States." *Id.* § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

## III. Discussion

The statutory framework for removal works like this: when a noncitizen's removal order becomes final, like here, the government has 90 days to effectuate removal. 8 U.S.C. § 1231(a)(1)(A). During that period, detention is mandatory. *Id.* § 1231(a)(2)(A). If the 90 days pass and the

noncitizen is still here, the statute gives the government a choice: release the individual on supervision or keep them detained. *Id.* § 1231(a)(6).

But as the Supreme Court explained in *Zadvydas v. Davis*, the authority to detain does not stretch into infinity. To avoid serious constitutional problems, the Court read an implicit limitation into the statute: the government may detain a noncitizen only for a period "reasonably necessary" to secure his removal. 533 U.S. 678, 699 (2001). And to make that rule workable, the Court established a presumption. For the first six months, detention is presumptively reasonable. *Id.* at 701. After that period has passed and the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden shifts to the government to provide evidence sufficient to rebut that showing. *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). Thus, "in order to state a claim under *Zadvydas*, the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id*.

Applied here, Gonzalez satisfies the initial temporal requirement. ICE took him into custody over six months ago. Because the period for presumptively reasonable detention has expired, *Zadvydas*'s burden-shifting framework applies. Gonzalez has carried his initial burden by showing a good

3

reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. He states that he has received no indication that ICE will remove him, as they have provided no travel document or a confirmed removal date. (Doc. 1 at 7.) Coupled with his Cuban citizenship, and failed attempts to remove him, those facts are enough.

The burden thus shifts to the Government to rebut Gonzalez's showing, but they fail to do so. *Akinwale*, 287 F.3d at 1052. In fact, the Government concedes it has no grounds to oppose the petition, and the claim is ripe. (Doc. 7 at 1.) This outcome should come as no surprise—the record offers no documents, no diplomatic agreements, and no concrete evidence that Gonzalez will be removed in the near future. (Doc. 7.) Instead, the Government submitted a declaration from Kristian Estrada, a deportation officer, that summarily states that there is a likelihood of Gonzalez's removal to Mexico. (Doc. 7-1 at 28-29.) But ICE offers no evidence that Gonzalez's acceptance into Mexico is likely, nor details Gonzalez's noncompliance. Indeed, not even a rough estimate of how long those procedures will take is offered. (*Id.* at 29.) Because ICE offers no concrete evidence that removal is likely in the near future, Gonzalez must be released.

It is easy to see why this outcome might cause unease. Gonzalez is a convicted felon. Yet, because the Government is completely unable to effectuate his removal, he has been allowed to live in this country for over

4

fifty years without facing the ultimate immigration consequence. But this Court is bound by the law. And the law is clear: the Government cannot lock individuals in a cell indefinitely as a workaround for a stalled deportation process, nor can it use indefinite detention simply to placate popular opinion. *Zadvydas*, 533 U.S. at 659. The Constitution cannot be ignored just because the facts are frustrating. If there is a flaw in a system that leaves convicted criminals in a state of perpetual immigration limbo, the remedy lies in the halls of Congress or with the Executive branch—not with a federal judge.

### III. Conclusion

Because the Government cannot show any real prospect of deportation, the Court finds no significant likelihood that Gonzalez will be removed in the reasonably foreseeable future. He is therefore entitled to release from ICE custody under *Zadvydas*. But that release is not a free pass—he remains subject to the strict conditions of his order of supervision. To the extent Gonzalez's pro se petition raised any other claims, they are denied. He is entitled to no other relief from the facts presented.

Accordingly, it is **ORDERED:**

1. The Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED** as set forth above.

2. Respondents are ordered to **RELEASE** Petitioner Maique Gonzalez from custody within 48 hours of this Order under the prior conditions of supervision, which Petitioner must continue to comply with.

3. The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close this case.

**ORDERED** in Fort Myers, Florida on May 29, 2026.

Kyle C. Dudek
United States District Judge